UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LISA DAY | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL CAUSE NO. _____ |
| RODNEY JAMES MCGAFFEY, TAYLOR | § | |
| MCGAFFEY, BOSS EXOTICS, LLC, and | § | |
| SPECIALTY EXOTICS, LLC | § | |
| | § | |
| Defendants | § | |

## ORIGINAL COMPLAINT

COMES NOW Plaintiff Lisa Day ("Ms. Day") to bring this Complaint for civil violations of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1964(c)) and for fraud or fraudulent inducement, breach of contract, civil violations of the Texas Deceptive Trade Practices Act, and conversion against Boss Exotics LLC, Specialty Exotics LLC, Rodney James McGaffey, and Tyler McGaffey. Plaintiff alleges as follows:

### FACTS - SHORT SUMMARY

1.      In 2022, the Defendants conspired to carry out a scheme to defraud the Plaintiff. The scheme involved Plaintiff's purchase of a Dodge Challenger Hellcat (the "Hellcat") that was advertised for sale by Defendant, Boss Exotics, LLC, which the Defendants ultimately stole from Plaintiff in November of 2022, pursuant to a purported—but wholly unlawful—"repossession" of the Hellcat. The Defendants have carried out this same scheme repeatedly, defrauding dozens of unsuspecting victims across a span or years.

2.      Ultimately, the scheme resulted in Plaintiff's loss of both the Hellcat *and* her Range Rover Velar, which she had traded in partial exchange for the Hellcat at an agreed value of $44,000.00, in addition to $22,580.00- she paid in cash—a total amount that actually exceeded the purchase price

of $64,975.00. Further, after unlawfully taking possession of the Hellcat in November of 2022 (and having never transferred title to Plaintiff as required by law), the Defendants extorted additional payments from the Plaintiff under a false pretext. They unlawfully asserted: (1) the right to cancel the sale agreement due to a falsely alleged breach of contract (despite retaining all of the sale consideration and excess payments) and (2) that to recover the Range Rover Velar the Plaintiff, would have to have to pay additional amounts as reimbursement for fraudulently alleged damages to the Hellcat while it was in her possession and for unlawfully levied (and unspecific) storage fees.

3.      The fraudulent scheme wrongfully left the Plaintiff without the use of a vehicle and badly needed funds, causing her significant economic damages and severe mental anguish.

4.      Significantly, the Defendants actions against Ms. Day are not an isolated incident. They mirror a pattern of conduct that the Defendants have regularly engaged in to defraud numerous other victims. The Defendants have together conspired and engaged in the same fraudulent scheme involving the sale, purchase, or rental of motor vehicles to the numerous victims, which in this and other cases has involved the collection of an unlawful debt. The Defendants continued such schemes even after the Texas Department of Motor Vehicles revoked the license of Boss Exotics to sell motor vehicles to the public for violations, and even when Raymond James McGaffey had only days to report to a federal penitentiary following a conviction for a scheme to defraud insurance companies.

5.      The Defendants have no regard for the law or their victims.  Their business exists to defraud and will continue to do so. Justice requires that they be stopped and that the Plaintiff be awarded damages and the return of her property.

**THE PARTIES**

6.      Plaintiff Lisa Day is resident of Collin County in the State of Texas.

7.      Defendant Boss Exotics LLC ("Boss Exotics") is a Texas limited liability company. On its website, Boss Exotics markets itself as being in the business of both renting and selling "exotic" or "fine" cars, including "certified pre-owned" vehicles.

8.      Boss Exotics is owned or controlled by Rodney James McGaffey and/or Taylor McGaffey.

9.      Defendant Specialty Exotics LLC ("Specialty Exotics") is a Texas limited liability company. On its website it markets itself as a seller and renter of "luxury exotic" cars that sets a "high bar" "when it comes to providing [its] clients with the best customer service in the nation" and "always having [its] customers best interest." Specialty Exotics is owned or controlled by Rodney James McGaffey and/or Taylor McGaffey.

10.     Rodney James McGaffey ("Rodney James") is a resident of Texas. Plaintiff believes he is currently incarcerated at Texarkana FCI pursuant to a plea agreement reached in this Court in Case No. 4:21-cr-00113-JDK-KPJ. Otherwise, his last known address is 4357 Waterstone Estates, Dr. McKinney, TX 75071.

11.     Rodney James regularly and frequently used several aliases, including the alias "Kyle Styles."

12.     Taylor McGaffey is a resident of Texas his last known business address is 4414 East Side Dr. Dallas, Texas 75226 in Dallas, Texas, where Specialty Exotics maintains an active license to the knowledge of Plaintiff. Plaintiff is unaware of the Taylor's current residential address but has reason to believe that he resides inside the jurisdiction of this Court.

13.     Rodney James McGaffey and/or Taylor McGaffey are brothers.

## JURISDICTION AND VENUE

14.     The Court has original subject-matter jurisdiction pursuant to 18 U.S.C. § 1964(c) and under 28 U.S.C. § 1331 because this action arises, in party, under the Federal Racketeer Influenced and Corrupt Organizations Act ("Federal Rico").

15.     The Court also has jurisdiction over the Plaintiff's related state and common law claims consistent with 28 U.S.C. § 1367.

16.     This Court has personal jurisdiction over the Defendants. They all reside or have their principal places of business within the Northern District of Texas. Additionally, the defendants' wrongful conduct giving rise to this case occurred within the district.

17.     Because the acts and events giving rise to Plaintiff's claims arose within the district, Venue 'is proper in this District pursuant to 28 U.S.C. § 1391(b)(2). Because the defendants have their principal residence or place of business within this district, Venue is also appropriate in this District pursuant to 28 U.S.C. § 1965(a).

## FACTS

18.     On July 30, 2022 Boss Exotics LLC ("Boss Exotics") and Specialty Exotics LLC ("Specialty Exotics") engaged together in a single transaction with Plaintiff Lisa Day.

19.     The transaction involved the sale to Ms. Day of a 2016 Dodge Challenger Hellcat (the "Hellcat") to Ms. Day in exchange for a cash price and title to her Range Rover Velar.

20.     Ms. Day became aware of the 2016 Dodge Challenger "Hellcat" through online advertising published by Boss Exotics or its owner, Rodney James McGaffey.

21.     Boss Exotics posed as a legitimate used car dealership although it lacked a license to sell motor vehicles at all times relevant to this case.

22.     Boss Exotics published the Hellcat for sale for $64,975.00 on the cargurus.com website.

23.    By publishing the Hellcat for sale on the website, Boss Exotics represented that it owned the Hellcat and that it would be the seller of the Hellcat.

24.    After seeing the advertisement, Ms. Day contacted a representative for Boss Exotics via a phone number it published on the relevant online advertisement.

25.    Ms. Day and the representative then exchanged text messages and had telephone conversations concerning the Hellcat and the terms of its prospective purchase.

26.    Ms. Day now believes that the representative was in fact Rodney James McGaffey.

27.    Ms. Day spoke with a representative of Boss Exotics about the possibility of trading in a 2018 Range Rover Velar as part of the purchase price.

28.    Pursuant to their conversations, Ms. Day would transfer to Boss Exotics her Range Rover Velar (at a value of $44,000), with the remainder of the price paid in cash, including a down payment of $2,500.00 and the remainder paid within seven (7) days (the "Contract"). In addition to the purchase price, Ms. Day was told she would need to pay an additional $2,390.00. Due to the lack of sales documents, it is not clear whether that amount was due as payment for financing and/or for tax, title and license ("TT&L")—but the Defendants never incurred costs for TT&L in any case.

29.    At a public parking garage in downtown Dallas, someone delivered to Ms. Day possession of the Hellcat (apparently Rodney James), and she delivered to that same person possession of the Range Rover and a payment of $2,580.00. That person also asked Ms. Day to sign a document.

30.    Ms. Day now believes that person was Rodney James McGaffey. However, the person introduced himself as "Michael."

31.    Ms. Day noted certain mistakes on the document, and in response, she was told it represented only preliminary documentation of the transaction and would be corrected in the pending final paperwork.

32.     The text of that document reads as if it is a bill of sale for her Range Rover Velar but says nothing about the terms for the Plaintiff's purchase of the Hellcat or the Hellcat as a means of payment for the Range Rover.

33.     The bill of sale names Specialty Exotics as the buyer of the Range Rover Velar. However, the Plaintiff had negotiated the transaction with Boss Exotics and reasonably expected to deal only with Boss Exotics.

34.     The bill of sale states that if the seller "does not release the vehicle after receiving the payment or if Seller doesn't provide shipping confirmation of the title within 7 days, then they **will not only face possible criminal charges** but also pay a loss of usage/ profit fee of one thousand dollars per day." (emphasis added). The bill of sale states other terms not consistent with the statutory and regulatory obligations of persons in the business of motor vehicle sales in Texas.

35.     At no time prior to presentation of the "bill of sale" did Ms. Day have any knowledge or notice that another party, Specialty Exotics, would be involved in the transaction.

36.     Brothers Rodney James and Taylor together own Boss Exotics and/or Specialty Exotics.

37.     Rodney James, Taylor, Boss Exotics and/or Specialty Exotics, all regularly do business with one another.

38.     Boss Exotics and/or Specialty Exotics are alter egos of one another and of Rodney James and Taylor.

39.     The licit and illicit business endeavors of Rodney James McGaffey and Taylor McGaffey are intertwined.

40.     Neither Boss Exotics nor Specialty Exotics or the individual defendants did anything to initiate the transfer to Plaintiff of title to the Hellcat or to furnish any paperwork substantiating the sale of the Hellcat.

41. After Ms. Day took possession of the Hellcat, there were outstanding obligations on both sides necessary to finalize the transaction, notably including paperwork documenting Ms. Day's purchase of the Hellcat, and cash payment to Boss Exotics of an additional amount of approximately $20,700.00, and the transfer of titles to the vehicles.

42. The Defendants never gave Ms. Day paperwork evidencing the sale of the Hellcat.

43. Because there was a payment pending after Ms. Day took possession of the Hellcat, the transaction was a "financed" sale.

44. Additionally, the transaction was a financed sale because Ms. Day was to pay a greater amount than the purchase price. Even if the additional amount of $2,390.00 she was to pay would go toward tax, title, and license, those items would represent only a portion of that cost—approximately $1,458.37 (title fee of approximately $95.00 plus 0.0625% sales tax on the sale value after crediting the trade in value of $44,000.00).

45. However, Boss Exotics was not licensed as a motor vehicle dealer.

46. Additionally, neither Boss Exotics nor Specialty Exotics had or has a license—required by Texas law—to engage in the *financed* sale of motor vehicles.

47. As an additional post-sale obligation, Ms. Day was promised a "red key" for the Hellcat (which allows a Hellcat driver to utilize its unrestricted horsepower) as she had been delivered only a "black key."

48. Pending Boss Exotic's compliance with its outstanding obligations, most importantly the transfer of the title to the Hellcat and the final sale paperwork, Ms. Day withheld transfer of title to the Range Rover to Specialty Exotics and also initially withheld payment.

49. Rodney James then made several threatening and aggressive demands to Ms. Day via text message with respect to title to the Range Rover and payment of the remaining purchase price

and an additional $2,500.00. He threatened to cancel the sales contract because the bill of sale contract called for full payment within 7 days of delivery of possession.

50.     Following those threats and demands, nine (9) days after receiving the Hellcat, Ms. Day wired $20,0000 to an account as instructed by a representative of the Defendants—even though Boss Exotics had not delivered paperwork documenting the sale, the "red key," or the title to the Hellcat.

51.     The instruction for payment came from Rodney James.

52.     Including the $44,000 agreed valuation of the Range Rover Velar, the initial payment of $2,580.00, and the additional $20,000 payment, Ms. Day paid the Defendants a total of $66,580.00: That amount is $1,605.00 in excess of the purchase price, excluding the additional amount of $2,390.00 charged by Defendants for financing and/or TT&L (leaving a difference of $785.00).

53.     The Defendants accepted and retained all of the payments.

54.     Despite retaining the entire purchase price, including the cash, the Range Rover, and the excess payment, the Defendants took the position that they had "cancelled" the Contract, claiming they disbelieved that Ms. Day in fact held title to the Range Rover Velar.

55.     The Defendants then twice "repossessed" the Hellcat.

56.     On the first occasion, Ms. Day called the police and reported the vehicle stolen (she was not aware of who had taken it). The driver was arrested, and the vehicle was returned to Ms. Day.

57.     On the second occasion, on November 7, 2022, Ms. Day again filed a stolen vehicle report, but because title to the vehicle was not in the name of Ms. Day, the police informed her that nothing could be done to return the vehicle to her via police enforcement powers.

58.     The Defendants were not entitled to "repossess" the vehicle. They were not a lawful lienholder and, in fact, Ms. Day had paid for the vehicle in full and all payments had been retained. The Hellcat rightfully belonged to Ms. Day. She had paid for it in full, and more.

59.     Additionally, the Defendants unlawfully retained Ms. Day's Range Rover Velar and personal property she had mistakenly left inside the Range Rover, including an Apple laptop computer, a designer purse, among other items.

60.     Because the Hellcat was payment for the Plaintiff's Range Rover, the Defendants breached the sale agreement and voided any obligation that Ms. Day had to transfer title to the Range Rover to any Defendant.

61.     Through the date of this Complaint, the Defendants have unlawfully retained Ms. Day's Range Rover and have failed to return the cash she delivered as payment for the Hellcat.

62.     After the emotional strain of being so wantonly defrauded and losing her savings and vehicles, Ms. Day for a time lost hope that she could do anything to recover the vehicle. She has suffered depression that has affected her ability to work and caused her to incur medical expenses.

63.     When she again undertook discussions with the Defendants to recover the vehicle, they informed her that they would surrender to her the Range Rover only if Ms. Day paid an additional $5,000.00. But the parties had agreed that the Range Rover had a value of $44,000 ($20,000 less than the purchase price of the Hellcat) and Plaintiff had already paid $22,500.00 in cash. The "deal" they offered her at this point would mean that Ms. Day would recover her Range Rover, but only after having paid $27,500.00.

64.     The Defendants claimed entitlement to this payment as the result of storage fees and supposed damage to the Hellcat's transmission, which they claim to have had to replace at a cost of $16,000.00.

65.     A representative of the Defendants furnished via SMS a photograph of an invoice, purportedly for a transmission replacement. However, that invoice is obviously false and does not support the claimed expense as it clearly states there are "0" dollars in charges for parts and labor. Defendants did not present any legitimate evidence of any replacement.

66.     Moreover, the claimed entitled to charge the Defendant was obviously false in that it was nonsensical. If the Hellcat had in fact been so badly damaged, following through with the sale and keeping the Range Rover Velar would have made much more economic sense.

67.     Further, Texas law does not allow motor vehicle dealers to charge storage fees and the Defendants had no right to assess any such charge.

68.     Pursuant to Texas law, no storage facility may charge vehicle storage fees without an owner's consent unless they are licensed as a Vehicle Storage Facility pursuant to Chapter 2303 of the Texas Occupations Code and send notices required by that statute.

69.     None of the Defendants are licensed as Vehicle Storage Facility.

70.     None of the Defendants held a lawful mechanic's lien encumbering the Range Rover Velar.

71.     None of the Defendants held a lawful mechanic's lien encumbering the Hellcat.

72.     On January 10, 2024, Micah Miller, an attorney who works for Plaintiff's counsel contacted Rodney James (or a person representing to be him) to attempt to obtain the return of the vehicle pursuant to a negotiation that would protect Ms. Day and ensure that Ms. Day would in fact obtain return of the vehicle in direct exchange for any additional payment made.

73.     Rodney James represented to Mr. Miller that the Range Rover Velar was stored at the location of Specialty Exotics at 4414 East Side Avenue, Dallas, Texas 75226.

74.     In the January 10, 2024, phone call, Mr. Miller discussed the demand purportedly with Rodney James of the Defendants demand for payment from Ms. Day of $5,000.00 to recover her Range Rover. The response was that that offer may not be on the table anymore and that Rodney James would have to discuss it with Taylor. When Mr. Miller asked for Taylor's number to call him, Mr. Miller was told, "no, you deal with me."

75. After determining that any deal-making for return of the vehicle with the Defendant was treacherous without proof of possession and status of the Range Rover Velar, Freeman Law sent the Defendants a demand letter, in attempt to obtain knowledge of the whereabouts and condition of the Range Rover Velar, in addition to some compensation for damages.

## CAUSES OF ACTION

### COUNT I: Violations of 18 U.S.C. § 1962(c) (Civil RICO)

76. Plaintiff realleges all of the above allegations as if fully set forth herein.

77. All Defendants violated 18 U.S.C. § 1962(c), injuring Plaintiff and giving rise to liability under 18 U.S.C. § 1964(c).

78. Under 18 U.S.C. § 1964(c):

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.

79. 18 U.S.C. § 1962(c) provides as follows:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

80. Defendants are each a "person" within the meaning of 18 U.S.C. § 1961(3).

**The Enterprise**

81. The Defendants together are an association-in-fact for the common and continuing purpose of engaging in fraudulent car sales and car rental transactions, among others, and to collect unlawful debts from consumers, including the Plaintiff. The defendants acted in concert to defraud the Plaintiff and to collected from her an unlawful debt.

82. The Defendants, each a distinct person associated with the enterprise, did conduct or participate, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961 (5), and l962(c).

83. This constitutes an enterprise within the meaning of 18 U.S.C. § 1961(4). The members of the enterprise functioned as a continuing unit with an ascertainable structure separate and distinct from that of the culpable individuals. On information and belief, several additional entities used by the Defendants form part of the fraudulent pattern of conduct and of the enterprise.

84. Alternatively, each of Specialty Exotics and Boss Exotics constitutes a separate enterprise within the meaning of 18 U.S.C. § 1961(4).

85. The association-in-fact enterprise and the alternative enterprises, as alleged herein, were not limited to predicate acts and extended beyond the racketeering activity. Rather, they existed separately and apart from the pattern of racketeering activity, and they may have conducted some legitimate business.

**Interstate Commerce**.

86. The activities of the enterprise or the predicate acts of racketeering affected interstate commerce because the enterprise purchased vehicles from other states, sold vehicles to individuals from other states, rented vehicles to individuals who visited Dallas from other states who they extorted and defrauded. The enterprise and specifically Boss Exotics actively marketed its services to individuals from other states, including by posting positive fake reviews from consumers located out of state on marketing websites, such as Yelp.

**Pattern of Racketeering Activity.**

87. Defendants, each of whom are persons associated with, or employed by, the enterprise, did knowingly, willfully and unlawfully conduct or participate, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C.

§ 1961(1), 1961(5), and 1962(c). Defendants' regular and repeated use of the facilities and services of the enterprise made the racketeering activity possible. Defendants had the specific intent to engage in the substantive RICO violation alleged herein.

88.    Predicate acts of racketeering activity are acts that are indictable under provisions of the U.S. Code under 18 U.S.C. § 1961(1)(B). Defendants each committed at least two such acts or else aided and abetted such acts.

**Mail and Wire Fraud.**

89.    The Defendants acted under a scheme or artifice to defraud for the purpose of obtaining money or property by means of false or fraudulent pretenses, representations, or promises. The Defendants (or someone associated with the scheme) used the mails or endeavored to cause the mails to be used.

90.    For instance, one of the Defendants (ostensibly Rodney James) emailed to the Plaintiff a FedEx label—attempting to persuade her to send the title to the Range Rover Velar to the Plaintiff—without having delivered the title to the Hellcat to her and as "security" for payment of the alleged unpaid portion of the purchase price. This was an attempt to unlawfully gain title to the Range Rover—in addition to unlawfully gaining possession—and was for the purpose of executing the scheme.

91.    The Defendants (or someone associated with the scheme) used wires for the purpose of executing the scheme. For example, as set forth above, the Defendants communicated extensively with the Plaintiff via SMS message, phone calls, and over the internet website, CarGurus.com. Additionally, the Plaintiff wired funds to a bank account owned or controlled by one or more of the Defendants on August 10, 2022 (according to the Defendants, it belonged to Specialty Exotics).

92.     Beyond their interactions with the Plaintiff, the enterprise posted fraudulent advertisements on the internet and used the internet, email, SMS messages, and bank wires as part of their schemes to defraud consumers.

93.     **Unlawful Debt**

94.     The Defendants charged an "unlawful debt" as defined 18 U.S.C. § 1961 as the short-term financing offered by the Defendants was usurious under Texas law. Under Chapter 348 of the Texas Finance Code, the transaction is deemed a "retail installment contract" under which the Plaintiff was to pay 7 days after the sale (but was paid 10 days after the sale). The payment amounted to more than 100% of the amount financed and 30.76% percent of the purchase price.

95.     The interest rate is usurious under Chapters 302 and 305 of the Texas Finance Code because the applicable rate of interest is over twice the applicable legally enforceable 6% rate of interest in Texas, no rate of interest was agreed, and none of the Defendants could permissibly charge interest on a Retail Installment Transactions given they were not licensed as required by Chapter 348 of the Texas Finace Code.  Therefore, the Defendants cannot legally enforce any interest charge.

96.     In the alternative, if all or a portion of the price charged in excess of the purchase price ($2,390) was a finance charge, the interest charged on the financed amount qualified as usurious under the Texas Finance Code and is more than twice the legally enforceable interest rate of 6%. The same is true if the $2,390 charge only financed fees for TT&L, which costs Plaintiff estimates at $1,458.375, which amount is 1.64 times the estimated cost of TTL, to be paid in 7 days.

### 'COUNT II: Conspiracy to Violate 18 U.S.C. § 1962(c) (Civil RICO) (All Defendants)

97.     Plaintiff reasserts all above factual allegations as if fully incorporated herein.

98.     The prior 18 U.S.C. § 1962(d) provides as follows:

It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

99.    Defendants are each a "person" within the meaning of 18 U.S.C. § 1961(3).

100.    The Defendants have conspired with one another to defraud the Plaintiff and consumers, including by the use of Specialty Exotics, whose DMV licensure was maintained by Taylor as ostensible "legal" cover their fraudulent sales schemes, given that Boss Exotics Motor Vehicle Dealer license had been revoked by the DMV.

### COUNT III: Fraud or Fraudulent Inducement

101.    Plaintiff reasserts all the above factual allegations as if fully incorporated herein.

102.    Defendants defrauded Plaintiff and/or fraudulently induced Plaintiff into the transaction involving the sale of her Range Rover Velar and the purchase of the Hellcat.

103.    The Defendants made misrepresentations to the Plaintiff, expressly or by omission, including the following false statement or omissions of material fact: that Boss Exotics owned the Range Rover Velar; that Boss Exotics and/or Specialty Exotics would transfer title to the Defendants upon payment of the purchase price; that Boss Exotics and/or Specialty Exotics would properly evidence the sale of the Hellcat by way of appropriate legal documents; that Boss Exotics and/or Specialty Exotics intended to deliver to Ms. Day and to allow her to retain the consideration they paid for Range Rover Velar.

104.    The Defendants knew the or should have known that these representations were false because the entire transaction was a scheme derived to obtain ownership of the Range Rover Velar wile avoiding delivery of title to the Hellcat. This is consistent with a pattern of fraudulent conduct engaged in by the Defendants, of which Plaintiff will furnish evidence to this Court.

105.    The Defendants intended to deceive the Plaintiff and to induce the Plaintiff to rely on the misrepresentation as demonstrated by their representations that Boss Exotics and/or Specialty Exotics would transfer title to the Hellcat to her. The Plaintiff reasonably relied on the

misrepresentation by delivering to the Defendants possession of her Range Rover Velar and by furnish the cash purchase price.

106.     As demonstrated by the above, Plaintiff suffered harm or damages as a result of her reliance, including loss of funds, loss of both vehicles, loss of her personal property, and mental anguish.

### COUNT IV: Texas Deceptive Trade Practices Act Violations

107.     Plaintiff incorporates all the above factual allegations as if fully set forth herein.

108.     Defendants violated the Texas Deceptive Trade Practices-Consumer Protection Act, Bus. & Com. Code Sec. 17.41, et seq. ("Act") in that Defendants made, undertook, and/or committed false, misleading, and/or deceptive acts and/or practices in the conduct of trade or commerce, which has caused Plaintiff economic damages and mental anguish, including but not limited to the following false, misleading, or deceptive acts or practices.

109.     The Defendants, together and individually, acting by and through their respective agents and representatives, engaged in several deceptive business practices prohibited by the below-numbered subsections of Section 17.46(b) of the Act (among others):

(1)     Passing off goods or services as those of another;

(2)     Causing confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services,

(3)     Causing confusion or misunderstanding as to affiliation, connection, or association with goods or services;

(9)     Advertising goods or services with intent not to sell them as advertised;

(12)     Representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

(24)    Failing to disclose information concerning services which was known at the time of the transaction and was intended to induce the consumer to into a transaction into which the consumer would not have entered had the information been disclosed.

110.    Further, the Defendants actions violated Section 17.50(a)(3) of the Act, which provides that any "unconscionable action or course of action." Under the Act, an "unconscionable action or course of action" means an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree.

## COUNT V: Breach of Contract

111.    Plaintiff reasserts all the above factual allegations as if fully incorporated herein.

112.    The Plaintiff and Boss Exotics or Rodney James entered into a contract for the purchase of the Hellcat in exchange for cash and the Range Rover Velar.

113.    The Plaintiff performed the contract by transferring possession of the Range Rover Velar to Specialty Exotics consistent with the instruction of Boss Exotics or Rodney James. Pending compliance with the furnishing of lawful and adequate transfer paperwork and title to the Hellcat, Plaintiff rightfully withheld the title to the Range Rover from Specialty Exotics.

114.    The Defendant breached the contract by stealing possession of the Hellcat from the Plaintiff under the pretense of a lawful repossession.

115.    Additionally, Specialty Exotics entered into a contract with the Plaintiff or the purchase of the Range Rover Velar under the Bill of Sale but breached that contract by failing to pay for the vehicle after the Hellcat was stolen from the Plaintiff.

116.    As a result, Plaintiff has incurred the damages described herein.

## COUNT VI: Conversion

117.     Plaintiff reasserts all above factual allegations as if fully incorporated herein.

118.     Plaintiff is the rightful owner of the Hellcat and/or the Range Rover and the money she paid for the Hellcat.

119.     Defendant has wrongfully stolen from the Plaintiff the Hellcat and simultaneously exercised unlawful possession over the Range Rover and the cash she paid for the Hellcat.

120.     As a result, Plaintiff has incurred the damages described herein.

## COUNT VII: Usury

121.     Plaintiff reasserts all above factual allegations as if fully incorporated herein.

122.     Pursuant to the purchase and sale agreement, (1) one or more of the Defendants advanced financing to the Plaintiff; (2) the Plaintiff had an obligation to repay the principal amount owed; and (3) one or more of the Defendants contracted for and has charged interest that exceeds the maximum amount allowed by law under the Texas Finance Code. As described above, none of the Defendants could permissibly charge any interest under the Texas Finance Code in connection with the sale of a motor vehicle. For any other amount financed or, in the alternative, under Tex. Fin. Code Section 302.002, the maximum interest rate allowed by law was 6%.

123.     As a result, the Plaintiff is entitled to damages under Tex. Fin. Code Sections 305.001 and/or 305.002, which include Deloach's forfeiture of the principal amount.

## DAMAGES & ATTORNEY FEES

124.     Presently, the Plaintiff's economic damages—excluding costs, attorney fees, and punitive or exemplary damages are no less than $80,000.00 and are likely far above that amount. They include the value of the Range Rover Velar and the loss of use of the Velar and/or the Hellcat. Additionally, the plaintiff incurred mental anguish damages and Plaintiff is entitled to treble or

exemplary damages and attorney fees under RICO and under the Texas DTPA. Plaintiff seeks actual damages, exemplary damages, mental anguish damages and attorney fees under RICO, the Texas DTPA, and/or Chapter 38 of the Texas Civil Practice & Remedies Code. Plaintiff also seeks exemplary damages under Chapter 41 of the Texas Civil Practice & Remedies Code.

## PRAYER

WHEREFORE Plaintiff asks to be awarded a judgment against Defendants for actual damages, exemplary damages, rescission, court costs, attorney's fees, and all other relief to which Plaintiff is entitled.

Respectfully submitted,

By:    /s/ Jason Freeman
       Jason B. Freeman
       TX Bar No. 24069736
       Jason@freemanlaw.com
       Micah D. Miller (seeking admittance to NDTX.)
       TX Bar No. 24070279
       mmiller@freemanlaw.com

       **FREEMAN LAW, PLLC**
       7011 Main Street
       Frisco, Texas 75034
       Telephone: 214.984.3410
       Fax: 214.984.3409

       **ATTORNEYS FOR PLAINTIFF**