UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LISA DAY, | § | |
| | § | |
|    *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 3:24-cv-02820-X |
| | § | |
| | § | |
| RODNEY JAMES MCGAFFEY, et al., | § | |
| | § | |
|    *Defendants.* | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Special Exotics LLC's Motion to Compel Arbitration. (Doc. 13). Having carefully considered the motion, Plaintiff Lisa Day's response, and the applicable case law, the Court **GRANTS IN PART** and **DENIES IN PART** the motion, compelling arbitration but declining to formally stay the case in the interim.

### I.  Factual Background

In 2022, Ms. Day saw an online advertisement for a 2016 Dodge Challenger Hellcat (Hellcat) priced at $64,975.00. She contacted a representative of Boss Exotics LLC to express interest in purchasing the vehicle. Day agreed to trade her 2018 Range Rover Velar (Range Rover), valued at $44,000.00, and pay the remainder of the Hellcat's purchase price in cash. The cash portion included a $2,500.00 down payment, with the remainder due within seven days.

On the day of the sale, the parties met at a public parking garage. Day delivered her Range Rover and $2,580.00 in cash to a representative of Boss Exotics,

Defendant Rodney James McGaffey, and in return received the Hellcat. Mr. McGaffey asked her to sign a Bill of Sale on a mobile device, which she did (despite apparent apprehension.) She also initialed the Sale Agreement (the "Agreement") attached to the Bill of Sale that listed Specialty Exotics, LLC as the seller and herself as the buyer. The Agreement included various arbitration provisions.

Following a series of dramatic events, Day filed suit against Boss Exotics LLC, Specialty Exotics LLC, Rodney James McGaffey, and Tyler McGaffey (collectively, "Defendants"), alleging civil RICO violations, fraud, breach of contract, DTPA violations, and conversion.

## II.   Legal Standard

The Federal Arbitration Act requires district courts to compel arbitration if there is a valid arbitration agreement encompassing the issues in dispute.[1] In determining whether the parties agreed to arbitrate the dispute, a court must consider: (1) whether there is a valid agreement to arbitrate between the parties, and (2) whether the dispute in question falls within the scope of that arbitration agreement.[2] The validity of the arbitration agreement is determined by traditional state contract principles.[3]

---

[1] 9 U.S.C. § 3.

[2] *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 530 (5th Cir. 2019).

[3] *Id.*

### III. Analysis

Specialty Exotics contends that the Agreement contained a valid arbitration provision which requires the parties to arbitrate all claims brought by Day in this dispute. Day disagrees, asserting that the arbitration provision is unenforceable for four reasons: (1) lack of consideration, (2) unconscionability and illusory terms, (3) claims outside the scope of the agreement, and (4) fraud in its formation. For the reasons explained below, the Court concludes that Day's assertions lack merit. Despite the unusual circumstances surrounding the sale of the Hellcat and the limited sophistication of the arbitration provision, the Court holds that the parties entered into a valid Agreement that requires arbitration of the claims at issue.

#### A. There was consideration to support the arbitration provision.

Under Texas law, "the party moving to compel arbitration must show that the agreement meets all of the requisite contract elements."[4] One such element is consideration.[5] Consideration for arbitration provisions "may take the form of bilateral promises to arbitrate."[6] Day argues that, because Defendants repossessed the Hellcat and retained her money, the Agreement containing the arbitration provision lacked consideration. In her view, Defendants received everything of value, while she received nothing.

---

[4] *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018) (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 228 (Tex. 2003)).

[5] *S.C. Maxwell Family P'ship, Ltd. v. Kent*, 472 S.W.3d 341, 345 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

[6] *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006).

The Court concludes that this argument misstates the nature of consideration in the arbitration context. The enforceability of the arbitration provision does not depend on the fairness or outcome of the underlying transaction. It rests on whether the parties exchanged mutual promises to arbitrate disputes.[7] Here, both sides expressly agreed to arbitrate, and that bilateral promise constitutes sufficient consideration to support a valid and enforceable arbitration agreement.[8]

### B. The provision is enforceable.

Day asserts that, even if a valid arbitration provision exists, it is unenforceable because it is (1) unconscionable, (2) illusory, and (3) against public policy.[9] In Texas, the burden of proving these defenses rests on the party opposing arbitration.[10]

#### i. The provision is not unconscionable.

Day argues that the arbitration provision is both procedurally and substantively unconscionable.[11] Under Texas law, courts cannot enforce arbitration provisions that are unconscionable.[12] Courts may consider both forms of unconscionability when evaluating validity: "Substantive unconscionability refers to the fairness of the arbitration provision itself, whereas procedural unconscionability refers to the circumstances surrounding adoption of the arbitration provision."[13] The

---

[7] *See id.*

[8] *See id.*

[9] Doc. 16 at 5–14.

[10] *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 500 (Tex. 2015).

[11] Doc. 16 at 5–11.

[12] Tex. Civ. Prac. & Rem. Code § 171.022.

[13] *In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 677.

test for substantive unconscionability is whether "the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract."[14]  Courts also recognize that plaintiffs may further pursue an unconscionability defense in the arbitral forum.[15]

Day contends that the arbitration provision is substantively unconscionable because it is one-sided in favor of Defendants, particularly due to the potential costs imposed on her if she brings claims.  Her strongest argument concerns a section of the arbitration provision which requires her to reimburse Specialty Exotics for all legal fees and expenses associated with arbitration.[16]  However, other sections also provide that the arbitrator "shall have the authority to award fees, costs, injunctive or equitable relief in accordance with the agreement and applicable law."[17]  Although the drafting is imprecise, this language authorizes the arbitrator to allocate fees to either party and ensures that any award complies with governing law. Accordingly, the Court concludes that the provision is not so one-sided as to render the agreement unconscionable.  Arbitration provisions do not require "mutuality of obligation."[18]  And any dispute over the application of the fee provision may be addressed in arbitration.[19]

---

[14] *Id.* at 678 (cleaned up).

[15] *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001).

[16] Doc. 13-1 at para. 13.

[17] *Id.* at para. 10.

[18] *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 757.

[19] *Id.* at 758.

Courts also require evidence that the financial burden is particularly harmful to the plaintiff.[20] Day has not shown that these costs exceed her financial means. Even if she could establish that the fee provision is unconscionable, that clause could be severed without invalidating the arbitration agreement as a whole.[21] The Court agrees that the arbitration provision leans favorable towards Defendants but does not find that the arbitration is "so one-sided as to be substantively unconscionable."[22]

Day also argues that the provision was procedurally unconscionable due to the circumstances of the sale. But this Court declines to accept that exchanging cars in a parking garage, where cars often are, and reading a contract on a mobile device, which people often do, make this agreement *per se* procedurally unconscionable. This is the case for the sale of every new Tesla, for example.

### ii.   The provision is not illusory.

An agreement is illusory where it fails to bind the promisor.[23] Day suggests the arbitration provision is illusory because "it is designed to prevent arbitration from going forward."[24] In substance, however, her argument is that the arbitration provision was "unfair."[25] This contention mirrors her unconscionability argument and fails for the same reasons. Moreover, the existence of "unequal bargaining power"

---

[20] *See, e.g., In re Poly-Am., L.P.*, 262 S.W.3d 337, 354–55 (Tex. 2008).

[21] *Id.* at 360 ("An . . . unconscionable provision of a contract may generally be severed so long as it does not constitute the essential purpose of the agreement.").

[22] *In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 678.

[23] *Id.* at 677 (cleaned up).

[24] Doc. 16 at 11.

[25] *Id.* at 12.

between the parties does not render an arbitration provision unenforceable or illusory.[26] The Court therefore concludes that Day's illusory-contract defense fails, and the arbitration provision remains enforceable.

### iii. The provision is not against public policy.

Further, Day claims that enforcement of the arbitration provision would be illegal and against public policy. Her claim fails to overcome the presumption that "Texas law favors settling disputes by arbitration."[27] Most of Day's argument against public policy is that the circumstances surrounding the provision violated the Texas Deceptive Trade Practices Act, but the Texas Supreme Court itself has held that such issues are subject to arbitration under the Federal Arbitration Act.[28] The Texas Supreme Court was clear that "federal law preempts application of the nonwaiver provision of the DTPA to prevent or restrict enforcement of [an] arbitration agreement."[29] The Court therefore concludes that Day's public policy argument cannot invalidate the arbitration provision.

### C. Day's claims are within the scope of the arbitration agreement.

Finally, the Court addresses Day's argument that her claims fall outside the scope of the arbitration agreement. She contends that (1) the claims are not covered by the provision and (2) the provision does not list all Defendants as signatories. For

---

[26] *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 892 (Tex. 2010) (cleaned up).

[27] *Id.* (cleaned up).

[28] *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 271 (Tex. 1992).

[29] *Id.*

the reasons explained below, the Court concludes that all of Day's claims fall within the scope of the arbitration provision.

In determining whether the claims at issue are within the scope of the arbitration provision, the Court must "examine the scope of the parties' agreement, as reflected in the arbitration clause."[30]  Here, the contract states that "*all claims and disputes* relating directly or indirectly to this Agreement or the [Hellcat] shall be resolved exclusively through binding arbitration and waiving the ability to file suit in court."[31]  In addition to this broad language, the provision specifies that issues such as "breach of contract, misrepresentation, conversation, fraud, or unfair and deceptive trade practices" all fall under the arbitration provision.[32]  The arbitration provision further covers "any claim of a violation of any local, state or federal statute, regulation, ordinance, rule, etc."[33]

Day argues that, given the substance of her claims, it would be "absurd" to require arbitration for claims "arising from theft and RICO conduct."[34]  However, no matter how absurd it may seem to her, Day's claims—including RICO violations, breach of contract, fraud, and deceptive trade practices—relate to the Hellcat and fall squarely within the arbitration provision she signed.  The Court is "obliged to enforce the parties' agreement according to its terms" and finds that Day's claims are all

---

[30] *Paper, Allied-Indus. Chem. & Energy Workers Int'l Union, Loc. 4-12 v. Exxon Mobil Corp.*, 657 F.3d 272, 275 (5th Cir. 2011).

[31] Doc. 13-1 at para. 9 (emphasis added).

[32] *Id.*

[33] *Id.*

[34] Doc. 16 at 15.

within the scope of the arbitration provision and are for the arbitrator to decide, not the Court.[35]

Day further argues that, even if the arbitration provision applies to her claims, it binds only herself and Specialty Exotics, LLC—not the other Defendants, who were non-signatories to the agreement. Generally, non-signatories to an arbitration provision cannot be bound by its terms.[36] However, courts in Texas have routinely held that parties "who had signed arbitration agreements could be compelled to arbitrate their disputes with non-signatory defendants."[37] Specifically, courts have explained that "a signatory plaintiff cannot avoid its agreement to arbitrate disputes simply by bringing claims against the [non-signatory] officers, agents, or affiliates of the other signatory to the contract."[38]

Day is correct that several Defendants—Rodney James McGaffey, Taylor McGaffey, and Boss Exotics, LLC—are not signatories to the Agreement.[39] But this case presents the very situation in which a signatory is seeking to evade arbitration by including non-signatory defendants.[40] All Defendants are closely connected to the contract, either as employees of Specialty Exotics or as a related entity, which makes the arbitration provision applicable to them as well. Although Specialty Exotics is

---

[35] *Exxon Mobil Corp.*, 657 F.3d at 276 (cleaned up); *see also Papalote Creek II, L.L.C. v. Lower Colorado River Auth.*, 918 F.3d 450, 455 (5th Cir. 2019).

[36] *See DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 314 (5th Cir. 2011).

[37] *Id.* at 315 (citing *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759 (Tex. 2006)).

[38] *Id.* (citing *Roe v. Ladymon*, 318 S.W.3d 502, 520 (Tex. App.—Dallas 2010, no pet.)).

[39] Doc. 13-1 at 5.

[40] *See, e.g.*, *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 762–63 (Tex. 2006).

the only named party to the contract, the agreement expressly encompasses the other "intimately" related and "intertwined" Defendants, and Day cannot avoid arbitration by invoking the other defendants' non-signatory status.[41]

### D. There was not fraud in the formation of the agreement.

Day's final argument against the arbitration provision's validity is that it was fraudulently induced. She contends that, because the arbitration provision was "principally" tied to the sale agreement, any fraud in the vehicle transaction also taints the arbitration provision.[42] However, fraud defenses "must specifically relate" to the arbitration agreement itself, such as misrepresentation of its terms or other material misrepresentations.[43] Even assuming the truth of Day's factual allegations, she has not identified any fraud or misrepresentation directed at the arbitration provision. Accordingly, the Court concludes that her fraudulent-inducement argument dot note foreclose arbitration.

## IV. Conclusion

The Court **GRANTS IN PART** the Defendant's motion to compel arbitration and **ORDERS** the parties to promptly arbitrate the claims set forth in this matter. (Doc. 13). However, the Court **DENIES IN PART** the Defendant's request to stay the action pending the completion of arbitration and further **ORDERS** the parties to update the Court every three months with a status report on the state of arbitration proceedings.

---

[41] *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 193–94 (Tex. 2007).

[42] Doc. 16 at 16.

[43] *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 756–58.

**IT IS SO ORDERED** this 29th day of September, 2025.

                                          BRANTLEY STARR
                                        UNITED STATES DISTRICT JUDGE